IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CT-3008-BO

| | |
|---|---|
| RICKY BARTLETT,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    O R D E R |
| | ) |
| MAX ROBESON, et al.,<br>    Defendants. | )<br>)<br>) |

Plaintiff Ricky Bartlett ("Bartlett" or "plaintiff"), a North Carolina state inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983. This suit relates to events surrounding Bartlett's arrest on July 30, 2008, for multiple charges involving assault with a deadly weapon upon a government official and fleeing to elude arrest [D.E. 1]. Bartlett alleges that during the arrest, the officers used excessive force against him and made derogatory comments. On September 1, 2011, December 16, 2011, and May 18, 2012, plaintiff filed motions for appointment of counsel [D.E. 14, 26, and 27]. On September 16, 2011, defendants' filed a motion for summary judgment [D.E. 17]. Bartlett sought several extensions of time to respond [D.E. 20, 22, 24] to the motion. The extensions were granted; however, Bartlett has never responded to the motion, and the last extension of time gave him until January 6, 2012, in which to do so. The matter is ripe for determination.

FACTUAL FINDINGS

Plaintiff is currently incarcerated at Nash Correctional Institution on habitual felon charges. Officers of the Camden County Sheriff's Office are familiar with Bartlett because of his

multiple incarcerations in the Albemarle District Jail. (D.E. 18, Mem. Supp. Mot. Summ. J, Robeson Aff. ¶ 3; Forbes Aff. ¶ 5; Worthington Aff. ¶ 10.)

On July 30, 2008, Detective Robeson who is a named defendant was on duty for the Camden County Sheriff's Department. (Id., Robeson Aff. ¶ 2-3.) He observed Bartlett driving a green and silver 1996 Ford F-150 pickup truck on N.C. Highway 343 at Neck Road. (Id., Robeson Aff. ¶ 3.) The defendant Robeson knew Bartlett was driving without a valid license and conducted a traffic stop as Bartlett was exiting his vehicle at a shopping center. (Id., Robeson Aff. ¶ 4.) Defendant Robeson ran a N.C. Department of Correction inquiry showing that Bartlett's license was suspended because he was convicted three or more times of driving while license revoked. (Id., Robeson Aff. ¶ 5.) Bartlett was placed into custody and taken to the Camden County Magistrate's Office. Id. Bartlett was then released on $1,000.00 unsecured bond. Id.

Less than an hour later, defendant Robeson again observed Bartlett operating the same green and silver pickup truck. (Id., Robeson Aff. ¶ 6.) Defendant Robeson pulled behind Bartlett and activated blue lights to conduct another traffic stop. (Id.; Compl. § IV.) Bartlett waved his hand out of the window, but did not stop the truck. (Id., Compl. § IV.) He turned right and sped up. (Id., Robeson Aff. ¶ 6.) Defendant Robeson activated the siren and called for other officers' assistance when it became clear that Bartlett did not intend to stop. Id.

Major Jon Worthington and Deputy John A. Forbes who are also named defendants to this action, responded to Robeson's call for assistance. (Id., Worthington Aff. ¶ 4; Forbes Aff. ¶ 3.) Defendant Forbes was on Sandy Hook Road and proceeded in the direction of the pursuit. (Id., Forbes Aff. ¶ 4.) Defendant Forbes first saw Bartlett as he was exiting a curve east of Smith

2

Corner Road. (Id., Forbes Aff. ¶ 5.) Bartlett swerved in front of defendant Forbes' vehicle, nearly causing a collision. Id. Bartlett did not heed defendant Forbes' blue lights or siren. Id. Bartlett continued to drive recklessly as defendant Forbes attempted to drive in front of Bartlett's truck. (Id., Robeson Aff. ¶ 7.) Bartlett responded by running off the right shoulder of the road, into and out of a ditch, and then drove into a field. (Id., Robeson Aff. ¶ 8.) Bartlett drove through that field and into the backyard of a residence. Id. Bartlett was swerving from lane to lane and defendant Forbes believed Bartlett was trying to hit his vehicle twice. (Id., Forbes Aff. ¶ 7.) Defendant Robeson used "the public address, or PA, system" on his sheriff's car on six occasions, ordering Bartlett to stop the truck. (Robeson Aff. ¶ 9.) Bartlett yelled something unintelligible and waved his hand out of the truck, but did not slow down or stop. Id.

At the same time, defendant Worthington drove to the southern part of the county in an attempt to get in front of the pursuit and stop Bartlett's vehicle. (Id., Worthington Aff. ¶ 4.) Because Bartlett's reckless swerving from lane to lane placed other drivers on the road at risk, defendant Forbes drove in front of Bartlett's vehicle so that oncoming traffic would see defendant Forbes' blue lights and pull off the side of the road. (Id., Forbes Aff. ¶ 8.)

At Sandy Hook Road, defendant Robeson pulled beside Bartlett's truck in an attempt to box Bartlett's truck in between his and defendant Forbes' patrol cars. (Id., Robeson Aff. ¶ 10.) Bartlett swerved his truck to the left, causing defendant Robeson to drive off the left shoulder and almost into a ditch. Id. Bartlett continued to wave his hand out of the window and jerk his truck back and forth to get around the patrol cars. Id. Defendant Worthington put down stop sticks at Sandy Hook Road and Sassafras Road. (Id., Worthington Aff. ¶ 5; Robeson Aff. ¶ 11.) Stop sticks are tire-deflation devices used to stop or impede the movement of vehicles by puncturing

the tires. (Id., Worthington Aff. ¶ 5; Forbes Aff. ¶ 10; Robeson Aff. ¶ 11.) Bartlett veered off the road to avoid the stop sticks and continued onto N.C. Highway 343 South. (Id., Worthington Aff. ¶ 5; Robeson Aff. ¶ 11.) Bartlett concedes that he saw the stop sticks, drove around them, and continued driving. (Compl. § IV.)

Driving through a stop sign at the intersection of Sandy Hook Road and N.C. 343 South, Bartlett continued south. (Mem. Supp. Mot. Summ. J., Worthington Aff. ¶ 5; Forbes Aff. ¶ 11; Robeson Aff. ¶ 11.) Defendant Worthington attempted to position himself in front of the pursuit once again. (Id., Worthington Aff. ¶ 6; Robeson Aff. ¶ 12.) Bartlett missed hitting defendant Worthington's patrol car several times. (Id., Worthington Aff. ¶ 6.) After nearly sideswiping defendant Worthington's car, Bartlett turned off the road and drove into a soybean field. (Id., Worthington Aff. ¶ 6; Forbes Aff. ¶ 11; Robeson Aff. ¶¶ 12-13.) Defendant Worthington deployed stop sticks for a second time. (Id., Worthington Aff. ¶ 6; Forbes Aff. ¶ 12; Robeson Aff ¶ 13.) Again, Bartlett drove around them. Id. In an effort to gain cooperation from Bartlett, defendant Worthington drew his service weapon, a pistol, pointed it at Bartlett, and ordered Bartlett out of the truck. (Id., Worthington Aff. ¶ 7; Robeson Aff. ¶ 13.) Bartlett ignored defendant Worthington's command and continued driving on Alder Branch Road before turning left onto N.C. 343 South. (Id., Worthington Aff. ¶ 7; Robeson Aff. ¶ 13; Forbes Aff. ¶ 13.) Near the intersection of Peatown Road and N.C. 343 South, Bartlett activated his left turn signal. (Id., Robeson Aff. ¶ 13; Forbes Aff. ¶ 13.) Bartlett then turned into a driveway and exited the truck. Id.

Defendant Forbes ordered Bartlett to get on the ground. (Id., Robeson Aff. ¶ 13; Forbes Aff. ¶ 14.) Bartlett did not comply. Id. Bartlett states that defendants Worthington, Robeson, and Forbes ran up to him, hit him in the head, and slammed him to the ground before kicking

him in the groin. (Compl. § IV.) Defendant Forbes states he forced Bartlett to the ground with the necessary degree of force to effect the arrest. (Mem. Supp. Mot. Summ. J., Forbes Aff. ¶ 15.) All of the officers involved deny that Bartlett was ever punched, kicked, or otherwise assaulted during or after the arrest. (Id., Worthington Aff. ¶ 8; Forbes Aff. ¶ 15; Robeson Aff. ¶ 19.) Following Bartlett's arrest, he was taken to the Camden County Sheriff's Office. After the hearing setting Bartlett's bond at $130,000.00, Bartlett complained of chest pains. (Id., Worthington Aff. ¶ 10; Robeson Aff. ¶ 17; Forbes Aff. ¶ 17.) Defendant Robeson applied automated external defibrillator ("AED") pads to Bartlett's chest, but he did not require a shock, the application of CPR, or any other medical assistance from the officers. (Id., Worthington Aff. ¶ 10.) Emergency Medical Services ("EMS") transported Bartlett by ambulance to Albemarle Hospital in Elizabeth City, North Carolina, where a blood test revealed the presence of cocaine. (Id., Worthington Aff. ¶ 10; Robeson Aff. ¶ 17.)

Defendant Worthington secured a Safekeeping Order for Bartlett so that a doctor could determine whether Bartlett needed further medical care. (Id., Worthington Aff. ¶ 11.) The Order was signed by Judge Edgar Barnes on July 31, 2008. Id. Bartlett was then transferred from Albemarle District Jail to Central Prison. (Id., Worthington Aff. ¶ 11; Robeson Aff. ¶ 18.)

Bartlett was later charged with multiple counts of assault with a deadly weapon upon a government official for his actions in ramming his truck into defendants Worthington, Robeson, and Forbes. Bartlett was also charged with fleeing to elude arrest with a motor vehicle. Bartlett did not complain of injuries to the officers, EMS, or any medical personnel at Albemarle Hospital. Nor did any of the officers see any sign of injury to Bartlett. (Id., Worthington Aff. ¶ 13; Forbes Aff. ¶ 15; Robeson Aff. ¶ 19.) In addition to his allegations of excessive force Bartlett alleges that, during transport to the sheriff's office, defendant Robeson said that Bartlett,

who is a black man, was in the wrong county to be dating a white girl and that she was living with Bartlett. (Compl. § IV.) Defendant Forbes, not defendant Robeson, transported Bartlett to the sheriff's office. (Mem. Supp. Mot. Summ. J., Robeson Aff. ¶ 14; Forbes Aff. ¶ 16.) Defendant Forbes states that he did not know nor have any reason to know who Bartlett was dating or who lived with him. (Id., Forbes Aff. ¶ 16.). Defendant Forbes also denies having made derogatory or racial remarks of any kind during transport. Id.

DISCUSSION

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

In support of the motion for summary judgment, defendant asserts the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. See Pearson v. Callahan, 555 U.S. 223, 236-238 (U.S. 2009); Siegert v. Gilley, 500 U.S. 226, 232 (1991); Rogers, 249 F.3d at 286.[1]

In the case at hand, Bartlett is alleging excessive force from the events leading to, during, and immediately upon his arrest on July 30, 2008. Bartlett was neither a prisoner nor pre-trial detainee. Therefore under the Supreme Court's ruling in Graham v. Connor, we must review Bartlett's excessive force claim under the Fourth Amendment and its "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989) (holding that "*all* claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard"). As the Court stated in Graham, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985) (internal quotation marks omitted)). Because such a test does not lend itself to a bright line rule, we must take into consideration the "totality of the circumstances" when assessing the reasonableness of force used by an officer. Garner, 471 U.S. at 8-9. In doing so, we view the totality of the circumstances "from the perspective of a

---

[1]In Pearson, the Supreme Court overruled the mandatory two-step sequence adopted in Saucier v. Katz, 533 U.S. 194 (2001). See Pearson, 555 U.S. at 236.

reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. "The extent of the plaintiff's injury is also a relevant consideration." Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003).

In this matter, plaintiff was well known to the law enforcement officers. On the day in question, he was first arrested for driving with a suspended license when defendant Robeson saw him driving. He was taken to the magistrate's office and released on bond. After release, and about an hour later, again the same defendant saw Bartlett driving the same truck. Where upon the defendant officer activated his lights and a chase ensued. It is clear that Barltett knew the officer and other officers, who joined in the pursuit, were trying to stop him. Their lights were activated, they were using sound systems, and twice placed stop sticks in the road. Bartlett drove around them, drove dangerously, drove through ditches and fields, and eventually stopped. Bartlett placed others on the road at serious risk.

Upon exiting the car Bartlett was brought to the ground. Bartlett states that defendants Worthington, Robeson, and Forbes ran up to him, hit him in the head, and slammed him to the ground before kicking him in the groin. Defendant Forbes states he forced Bartlett to the ground with the necessary degree of force to effect the arrest. All of the officers involved also deny that Bartlett was ever punched, kicked, or otherwise assaulted during or after the arrest. Bartlett has not responded to the affidavits in support of the motion for summary judgment an proffers no evidence to refute the sworn statements.

Following Bartlett's arrest, he was taken to the Camden County Sheriff's Office. Bartlett complained of chest pains, defendant Robeson applied automated external defibrillator ("AED") pads to Bartlett's chest, but he did not require a shock, the application of CPR, or any other medical assistance from the officers. Barltett was taken to Albemarle Hospital in Elizabeth City,

North Carolina. There no other injuries were treated or noted; however a blood test revealed the presence of cocaine. A Safekeeping Order for Bartlett was also obtained so that a doctor could determine whether Bartlett needed further medical care and Bartlett was transferred from Albemarle District Jail to Central Prison. The court finds that the force used in the incident was objectively reasonable under the totality of the circumstances and defendants are cloaked with qualified immunity.

Second, allegations that defendant Forbes or Robeson used threatening language fails to state a claim under § 1983. See Collins v.. Cundy, 603 F.2d 825, 827 (10th Cir.1979), cited favorably in, Moody v. Grove, 885 F.2d 865 (4th Cir.1989) (table) (unpublished) (stating as a general rule that verbal abuse of inmates by guards, without more, does not state a constitutional claim); Morrison v. Martin, 755 F. Supp. 683, 687 (E.D.N.C. 1990) (same). The Constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). Verbal harassment or idle threats, even to an extent that it causes fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. See Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989) (stating verbal threats causing fear for plaintiff's life not an infringement of a constitutional right); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate constitutional rights); Lamar v. Steele, 698 F.2d 1286 (5th Cir. 1983) ( "Threats alone are not enough. A[§ ] 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."); Keyes v. City of Albany, 594 F. Supp. 1147 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim."). The law is clear that mere "threatening language and gestures of [a] penal officer do not, even if true, constitute constitutional violations." Fisher v. Woodson, 373 F.

Supp. 970, 973 (E.D.Va. 1973). Thus, the claim that one of the officers used derogatory language against Bartlett regarding an alleged relationship is not actionable. Furthermore, Bartlett does not refute the affidavits to the contrary of his allegations in the motion for summary judgment.

Accordingly, defendants' motion for summary judgment is ALLOWED [D.E. 17]. Having so determined, all other pending motions are DENIED as moot [D.E. 14, 26, and 27]. The Clerk is DIRECTED to close the case.

SO ORDERED, this the _15_ day of June 2012.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE